[Civ. No. 2044. Fourth Appellate District.—July 25, 1938.]

MARTHA RATCLIFF, Respondent, v. THE SAN DIEGO BASEBALL CLUB OF THE PACIFIC COAST LEAGUE (a Corporation), Appellant.

Wright, Monroe, Thomas & Glenn for Appellant.

Eli Levenson and J. J. Brennan for Respondent.

BARNARD, P. J.—This is an action for damages for injuries suffered by the plaintiff as a result of being hit with a baseball bat which had slipped from the hands of a player.

The plaintiff purchased a ticket for a seat in the grandstand of the playing field operated by the San Diego Baseball Club for a game between that club and the Sacramento Club. A regular aisle or passageway ran along the front of this grandstand, being parallel to the line between home plate and first base, and some forty or forty-five feet distant from that line. The central part of the grandstand, being that portion which was back of the home plate and for some distance on each side thereof, and the corresponding part of the passageway, were protected by a wire screen about thirty feet high. At the time in question, which was shortly before the opening of the regular ball game, certain members of the Sacramento Club were engaged in batting practice with a pitcher in the box and a left-handed batter at home plate. The plaintiff was walking along this passageway on her way to a seat in the section protected by this screen. When she had almost reached the part of the passageway which was protected by the screen the batter took a swing at a ball, missed it, and the bat slipped out of his hands and flew through the air, passing just beyond the end of the screen and striking and injuring her. It was ninety feet from the home plate to first base and there is evidence that the point at which the plaintiff was struck was eighty feet from the home plate.

In this action the San Diego Baseball Club was made a defendant on the theory that it was negligent in failing to

protect this portion of the entrance passage, and the Sacramento Club and its batter were joined on allegations that the baseball bat had been negligently and carelessly thrown. A jury returned a verdict for $2,000 as against the San Diego Club, but found in favor of the other defendants. From the judgment which followed the San Diego Baseball Club has appealed.

■ There is no dispute as to the facts which led to this injury. There is little dispute as to the rules of law, but there is a wide difference of opinion between the parties as to the application of this law to the conceded facts. A number of cases from various states are cited which involve the question of liability to a spectator for injuries received from a thrown or batted ball at a professional game. Some of the usual rules applied in such cases are summarized in *Quinn* v. *Recreation Park Assn.*, 3 Cal. (2d) 725 [46 Pac. (2d) 144], as follows:

" 'With respect to the law governing cases of this kind, it has been generally held that one of the natural risks assumed by spectators attending professional games is that of being struck by batted or thrown balls; that the management is not required, nor does it undertake to insure patrons against injury from such source. All that is required is the exercise of ordinary care to protect patrons against such injuries (*Edling* v. *Kansas City Baseball etc. Co.*, 181 Mo. App. 327 [168 S. W. 908]), and in doing so the management is not obliged to screen all seats, because, as pointed out by the decisions, many patrons prefer to sit where their view is not obscured by a screen. Moreover, the management is not required to provide screened seats for all who may apply for them. The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion (*Wells* v. *Minneapolis Baseball etc. Assn.*, 122 Minn. 327 [142 N. W. 706, Ann. Cas. 1914D, 922, 46 L. R. A. (N. S.) 606]; *Brisson* v. *Minneapolis Baseball etc. Assn.*, 185 Minn. 507 [240 N. W. 903]): and if as in the cases of *Wells* v. *Minneapolis Baseball etc. Assn.*, supra, and *Kavafian* v. *Seattle Baseball Club Assn.*, 105 Wash. 215 [177 Pac. 776, 181 Pac. 679], a spectator chooses to occupy an unscreened seat, or as in the Brisson case, *supra,* is unable to secure a screened seat and consequently occupies one that is not protected, he as-

sumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded from recovering damages therefor.' ''

The essence of these rules seems to be that those in charge of such games are not insurers of their patrons, that they are required to exercise ordinary care to protect their patrons from such injuries, that they are not required to screen all seats, and that they have met the burden thus resting upon them when they have provided a protected area sufficiently large to accommodate as many as may be reasonably expected to call for such protection. It is well settled that one who voluntarily occupies a seat outside of the area thus protected assumes the natural and well known risk of being struck by thrown or batted balls. It seems also to be generally recognized that a duty rests upon the management reasonably to protect that part of the grandstand behind and near the home plate, where the greatest danger from flying balls exists.

While the instant case does not involve a flying ball it seems clear that similar principles are, in part, applicable and that the exercise of ordinary care for the protection of patrons of baseball games requires that they should be furnished protection from flying bats, at least in the area where the greatest danger exists and where such an occurrence is reasonably to be expected. This seems to be conceded by the appellant, its main contentions being that it is not liable for a failure to guard against this accident in the absence of proof that the same was one which should reasonably have been anticipated, that the undisputed evidence fails to show such a situation, and that there is, therefore, no evidence to show negligence upon its part.

It is conceded that this accident would not have happened if the existing screen had extended an additional two or three feet in the direction from which the respondent was coming. It is also conceded that baseball bats somewhat frequently slip from the hands of batters, but it is earnestly contended that there was no evidence that on any previous occasion, anywhere, such a bat had been known to travel at the exact angle and for the exact distance which this one did. From this it is argued that the happening of such an accident as this could not have been anticipated by the appellant. This

calls for a brief review of the pertinent portions of the evidence.

A number of witnesses who had been long connected with professional baseball testified to the general effect that they had many times seen a bat slip from the hands of a batter when he swung hard at a ball and missed it, that on such occasions, when the batter was left-handed, the bat would fly in the general direction of first base, that more often than otherwise it would go inside the playing field or diamond, that often it would not, that usually it would not go as far as first base, and that sometimes it would go that far or farther. One witness testified that he had seen bats slip out of the hands of players and that on the occasion here in question "the player took a healthy swing at the ball, but missed it, and the bat naturally flew out of his hands and went whirling in the air". Another witness testified that he had played professional ball for fourteen years, that he had seen bats slip out of the hands of players a great many times, that such an occurrence would average about once in every three games, that a majority of these bats went into the infield, that sometimes they would go as far as first base, that a good many do not go that far, that it is comparatively rare for one to go into the grandstand, but that he had seen them go into the grandstand. When asked if it was not an unusual thing for a bat thus slipping from the hands of a player to go far enough to the side and a sufficient distance to go into the grandstand he replied: "Well, no, I have seen a good many of them go into the stands." The batter from whose hands this bat slipped testified that he had seen bats slip on many occasions, that on several occasions he had seen them go into the stands, that it was a natural thing for a bat from a left-handed player to go in the direction in which this bat went, that on some occasions such bats will go as far as first base, that they may go in any direction, and that the direction the bat goes depends upon how far around the batter has gone with his swing at the time the bat slips. The manager of the appellant club testified that this bat traveled about eighty feet, that he had seen bats slip from the hands of batters, that he had seen them go into the grandstands, and that he ___ bat travel as far as this one did under similar circumstances ___ g a ball game.

The respondent having purchased a ticket which entitled her to a seat in the protected section of this grandstand was proceeding thereto along the passageway which had been provided for that purpose by the appellant. While the appellant was required to exercise only ordinary care in protecting the respondent from such an injury as this while she was proceeding along the passageway thus provided, that duty was not performed if such an occurrence as this should have been reasonably anticipated by the appellant. Under the circumstances here appearing it cannot be said, as a matter of law, that such a happening as here occurred could or should not have been anticipated. There is ample evidence that bats rather frequently slip from the hands of batters and that such occurrences are not unusual, although they may not occur in every game. It appears that occasionally such bats fly into the grandstand and that such an occurrence has been many times observed by each of the witnesses who were professionally engaged in the game. It further appears that not infrequently a bat so slipping from the hands of the player goes a distance of ninety feet or more. There is not only evidence that such bats sometimes go into the grandstand, but it is a reasonable inference from the testimony that the exact direction in which such a bat will fly depends upon the position of the player at the time the bat slips from his hands and cannot be foretold, although the distance it may travel is reasonably well known. The fact, if it be a fact, that no one had before seen such a bat fly through the air at exactly this angle and for this precise distance is not controlling here. The very fact that the exact line of flight cannot be determined in advance is in itself a good reason why the exercise of reasonable care in guarding against such an incident should require the furnishing of protection over the area where experience has shown that such a danger is to be expected. It was a question for the jury whether such an accident as this could have been reasonably anticipated and we think the evidence is sufficient to sustain their finding upon that question. ▉ The matter was submitted to the jury under instructions which correctly set forth the appropriate rules of law. This is conceded by the appellant, with one exception, which will now be considered.

The court gave the following instruction:

"You are instructed that in considering the question of negligence of the defendant San Diego Baseball Club, you may consider the closeness and the proximity of the playing field to the grandstand and the aisle in which the plaintiff was walking when she was injured."

The appellant contends that in giving this instruction the court erred in laying undue emphasis on one portion of the evidence. There was evidence that the home plate was thirty-one feet six inches in front of the screen back-stop which in turn was five feet from the grandstand, and that the line from home plate to first base was approximately thirty-six feet from the grandstand. The real issue presented to the jury was whether or not an occurrence of this kind should have been anticipated by the appellant. This involved the consideration of the testimony as to previous occurrences of this nature and the distance and direction traveled by bats which have slipped from the hands of the players, as shown by past experience. It was proper for the jury to consider the testimony relating to past experience along this line, in connection with the actual position of this playing field as related to the grandstand and the passageway. The court so instructed the jury and we are unable to see how the matter was unduly emphasized.

The judgment is affirmed.

Marks, J., concurred.

Haines, J., *pro tem.*, deeming himself disqualified, did not participate herein.