# Cruz v. Gloss

450

C.P. of Carbon County, no. 00-2092.

*Stephen K. Carr,* for plaintiff.
*Collin Hannings,* for defendant.

NANOVIC, *J.,* May 1, 2002—In this case we must determine whether the Skier's Responsibility Act applies to a personal injury action brought by an injured skier against a snowboarder and, if so, the standard of care owed by one sporting participant to another.

The relevant facts are largely undisputed. On January 26, 1999, at approximately 8:45 p.m. the plaintiff, Cynthia P. Cruz, was downhill skiing on Paradise Trail at the Blue Mountain Ski Area in Carbon County, Pennsylvania. Paradise Trail is designated as a beginner's slope and is used by both skiers and snowboarders. Few people were skiing or snowboarding at the time.

As she descended the trail, Cruz was weaving back and forth across the trail making "S" curves. She was about one-third from the right-hand side of the trail on a straightaway when she stopped to rest. Within moments, the defendant, David M. Gloss, who was snowboarding in a line down the one-third right-hand side of the trail collided with Cruz.

On October 25, 2000, Cruz filed a complaint against Gloss alleging general negligence and recklessness and claiming she sustained severe and permanent injuries to her right knee. Cruz asserts, in part, that Gloss' conduct violated various safety provisions of the Skiers' Code of Responsibility. The provisions of the Skier's Responsibility Act, 42 Pa.C.S. §7102(c), have been raised as a defense and are now before us in a motion for summary judgment.[1]

---

1. The standard of review when acting on a motion for summary judgment was recently detailed in *Petrongola v. Comcast-Spectacor L.P.,* 789 A.2d 204, 208-209 (Pa. Super. 2001).

"Summary judgment is governed by the Pennsylvania Rules of Civil Procedure as follows:

"Rule 1035.2 Motion

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

The Act, in its entirety, provides:

"(c) Downhill skiing.—

"(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

"(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsection (a) and (b)."

---

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

"Pa.R.C.P. 1035.2. A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa. R.C.P. 1035.2 Note. Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action. If the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. The non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party. As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence of a triable issue."

This standard has been applied in reviewing Gloss' motion for summary judgment.

The Act is a subsection of the Pennsylvania Comparative Negligence Act, 42 Pa.C.S. §7102.

Cruz argues the Act is only intended to protect ski area operators; Gloss contends the Act is not so limited and may be used as a shield against liability by one skier who negligently harms another or, as in this case, by a snowboarder whose alleged negligence causes downhill skiing injuries. The issue, as far as we can determine, is one of first impression in this Commonwealth.

Contrary to Cruz' position, the language of the Skier's Responsibility Act is not limited to claims for skiing injuries or damages caused by ski areas alone. The Act states in unambiguous, unqualified, and broad language that the doctrine of voluntary assumption of risk "as it applies to downhill ski injuries and damages is not modified by subsections (a) and (b)." 42 Pa.C.S. §7102(c)(2).

The court may not create ambiguity where none exists. Nor may the court ignore the clear language of a statute in favor of pursuing its perceived intent. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921(b); *Kmonk-Sullivan v. State Farm Mutual Automobile Insurance Co.,* 567 Pa. 514, 788 A.2d 955, 959 (2001). As written, the Act is one of general application applying equally to ski area operators as well as other parties potentially responsible for downhill skiing injuries and damages.

This interpretation, while acknowledging the continued viability of the doctrine of voluntary assumption of the risk to skiing, begs the more difficult questions as to what is the doctrine of voluntary assumption of the risk and how is it to be applied in this case.

In *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 762 A.2d 339 (2000), the Pennsylvania Supreme Court

analyzed the common-law doctrine of assumption of the risk and its application to a skier's claim of negligence against the skiing resort where plaintiff was hit by another skier. The doctrine, as applied, has at least four different meanings:

(1) Express assumption of the risk, essentially a contract, is when the plaintiff gives his express consent to known and inherent dangers of a particular activity and agrees to hold the defendant harmless.

(2) The next meaning occurs when the plaintiff voluntarily accepts *known* or *obvious* risks involved in a particular plaintiff/defendant relationship and the defendant has no duty with respect to the plaintiff. This meaning is commonly referred to as the "no-duty" rule.[2]

---

2. This meaning of assumption of the risk involves an objective as well as a subjective standard for judging plaintiff's appreciation of the risk. "For a danger to be 'known' to the invitee, it must 'not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.' . . . A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.' " *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 132, 542 A.2d 525, 531-32 (1988). (internal citations omitted) To an extent, the subjective component of this rule overlaps and coincides with the third meaning discussed below which "is applicable in a wide variety of situations, not just in suits between parties in some type of special relationship." *Id.* at 134, 542 A.2d at 532. " 'No duty' cases find a defendant not liable if a reasonable person in the position of the plaintiff would have recognized the danger, in addition to finding no liability where the plaintiff did in fact subjectively appreciate the danger." *Id.* at 134, 542 A.2d at 532. See also, *Schentzel v. Philadelphia National League Club,* 173 Pa. Super. 179, 188, 96 A.2d 181, 186 (1953) (A first-time spectator at a baseball game was held to assume the risk of being hit by a foul ball because "she must be presumed to have been cognizant of the 'neighborhood knowledge' with which individuals living in organized society are normally equipped.").

The most common relationship to which the rule is applied is that between a business invitee (*i.e.,* the plaintiff) and a possessor of land (*i.e.,* the defendant) and it must be determined whether the injury was caused by a risk "common, frequent, and expected" to the activity involved, constituting, in effect, an inherent or incidental risk of the activity which the invitee customarily accepts vis-à-vis the possessor. The classic example is a spectator at a baseball game to whom no duty is owed by a player for hitting a foul ball into the stands.[3]

(3) The third meaning is when the plaintiff voluntarily accepts or encounters a known danger created by the defendant's negligence even though plaintiff's decision to do so may be reasonable.[4] An example is where the

---

"The 'no duty' concept involves a finding that the defendant had no duty to the plaintiff and, therefore, was not negligent." *Berman v. Radnor Rolls Inc.,* 374 Pa. Super 118, 132, 542 A.2d 525, 531 (1988). Under this rule, the burden of proof is upon the plaintiff since the duty of the defendant is an element of plaintiff's prima facie case. *Id.* at 134, 542 A.2d at 532.

3. Because the "no duty" rule "is a policy-driven concept that flows from the legal relationship of the parties, not their subjective expectations, it is applied according to an objective, rather than a subjective, standard. Thus, for purposes of determining whether the doctrine negates a defendant's duty of care, thereby barring a plaintiff's action, the plaintiff's knowledge plays a role but the inherency of the risks involved in the particular sport is the sine qua non." *Mark v. Moser,* 746 N.E.2d 410, 418 (Ind. Ct. App. 2001). (citations and internal quotation marks omitted)

4. "In contrast to the 'no duty' theory, [this meaning] requires that the defendant show that the plaintiff was 'subjectively aware of the facts which created the danger and . . . must have appreciated the danger itself and the nature, character and extent which made it unreasonable.' " *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 133, 542 A.2d 525, 532 (1988). In addition to being aware of the danger and consciously appreciating the risk of injury, the circumstances must

plaintiff continues to use a defective lawnmower that he knows is defective because the inconvenience of repair outweighs the added risk of injury.

(4) The fourth meaning is where the plaintiff unreasonably accepts a known threat of danger in pursuing a particular course of conduct. This situation would exist

---

establish that plaintiff proceeded to encounter the risk and tacitly accepted responsibility for injury to himself, rather than placing such responsibility on the defendant. *Bullman v. Giuntoli,* 761 A.2d 566, 570-71 (Pa. Super. 2000), *appeal denied,* 565 Pa. 661, 775 A.2d 800 (2001).

"[T]he rationale for depriving the plaintiff of recompense for his injuries is as follows:

" '[T]he essence of [this meaning] is not fault but that the plaintiff changed his position. Before the injury, he intelligently acquiesced in a known danger and abandoned his right to complain, but afterward, seeks to assert the claim he had waived. See *Jones v. Three Rivers Management Corp.,* [483 Pa. 75, 394 A.2d 546 (1978)]' " *Berman, supra* at 136-37, 542 A.2d at 534, quoting *Fish v. Gosnell,* 316 Pa. Super. 565, 578-79, 463 A.2d 1042, 1049 (1983).

This standard focuses on what the plaintiff actually knew, not what the reasonable man should have known. Further, this aspect of assumption of the risk does not merge in the concept of "duty" but recognizes the existence of the duty owed at the same time it relieves the defendant of liability for breaching that duty.

"A plaintiff will not be precluded from recovering except where it is *beyond question* that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries." *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 229, 665 A.2d 4, 6 (1995). (emphasis in original)

This form of assumption of the risk is an affirmative defense, and not an ultimate conclusion of fault or liability. "[A] determination that [this form of] assumption of the risk does not apply does not equate with a finding that the defendant is legally liable for the plaintiff's injury, it merely means that the plaintiff will not be prevented from presenting a fault-based inquiry into the responsibility for the injury." *Bullman v. Giuntoli, supra* at 569 n.2.

if the plaintiff takes an unnecessary and expedient short-cut to his destination, confronting known hazards along the way. See *Hughes,* 563 Pa. at 505-506, 762 A.2d at 341-42; *Auckenthaler v. Grundmeyer,* 110 Nev. 682, 685-86, 877 P.2d 1039, 1041 (1994).[5]

Assumption of the risk as applied to participants and spectators at sporting activities frequently involves the "no duty" rule and requires an answer to the question: Is the injury a result of a risk "inherent" in the activity in question. *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 508, 762 A.2d 339, 343 (2000). Put another way: Is the risk one plaintiff is deemed to have assumed? If answered affirmatively, the defendant was under no duty to the plaintiff and the suit should not go forward. *Id.* at 508, 762 A.2d at 343. If, however, the injury resulted from "foreseeably dangerous conditions not inherent in the [sporting] activity," the suit should proceed. *Id.* at 509, 762 A.2d at 344.

In the context of allocating the risk of harm between a skier and the owner/operator of a skiing resort, *Hughes* tells us that the risk of one skier being hit from behind by another skier is an "inherent risk" of downhill skiing which must be borne by the plaintiff under the Act. In reaching this conclusion, the Supreme Court noted that plaintiff "collided not with some alien or unexpected object in the sport, but with another downhill skier coming down the very same hill after her" and equated such

---

5. Prosser & Keeton divide assumption of risk into "express" assumption of risk and three forms of "implied" assumption of risk: "primary", "secondary", and "unreasonable." Prosser and Keeton, On the Law of Torts, §68, at 480-98 (5th ed. 1984). These forms correspond respectively to the four different meanings of assumption of the risk described in the text.

risk as being "as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions." *Id.* at 510-11, 762 A.2d at 344.

Whether this same result should control, as a matter of law, in allocating the risk of harm between a skier and another skier or, as here, a snowboarder, is, we believe, a different and more difficult question. In *Hughes,* the risk being allocated was between one participant and the owner/operator of the sporting activity to whom the alleged tortious conduct of another participant could not be attributed. Here, the risk being allocated is between one participant and another participant who is alleged to have engaged in negligent or reckless misconduct causing injury to the plaintiff.

The interplay between the duty owed by one sporting participant to another and the risks assumed by the other is particularly acute in sporting activities. The relative rights, duties, and responsibilities between sporting participants have not been discussed by our appellate courts. In consequence, reference must be made to fundamental principles of tort law and comparison with some states which have addressed the issue.

To begin, we start with the basic rule that "a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *Petrongola v. Comcast-Spectacor L.P.,* 789 A.2d 204, 210 (Pa. Super. 2001). Whether such duty exists, and the scope of such duty, is a question of law. *Id.* at 210. The standard of care imposed by a duty depends upon the nature of the activity and risks involved, the relationship between the parties and the activity, and public policy considerations.

"When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff . . . and, unless there is a duty upon the defendant in favor of the plaintiff that has been breached, there can be no cause of action based upon negligence. Whether a duty exists is ultimately a question of fairness. The inquiry involves weighing the relationship of the parties, the nature of the risk and the public interest in the proposed solution. Our duty analysis depends on many factors and is necessarily rooted in public policy considerations, *i.e.,* our ideas of history, morals, justice, and society in general in determining where the loss should fall . . . . Furthermore, duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the question . . . . To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times." *Petrongola v. Comcast-Spectacor L.P.,* 789 A.2d at 210.

The "no duty" aspect of assumption of the risk is, in concept, not a separate inquiry from the determination whether a duty exists and its scope, but is part and parcel of the same inquiry.

"By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. . . . It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty

on the part of the possessor to protect the invitee against such dangers." *Carrender v. Fitterer,* 503 Pa. 178, 188, 469 A.2d 120, 125 (1983). (citations omitted) (Chiropractic clinic held to have no duty to patient for injuries sustained when patient slipped and fell while crossing an obvious and avoidable isolated patch of ice on the clinic parking lot.)

With these principles in mind, we believe Cruz should be permitted to test as a question of fact before a fact-finder whether or not Gloss' conduct was unreasonably dangerous and subjects him to liability rather than be barred from such inquiry as a matter of law. While the general risk of collision with another skier or snowboarder may well be a common, frequent, and expected risk of downhill skiing, the risk is enhanced and not necessarily common, frequent, and expected when caused by the negligence of another participant. *Duncan v. Kelly,* 249 A.D.2d 802, 803, 671 N.Y.S.2d 841, 842 (1998) ("Although an individual who participates in downhill skiing assumes the usual risks inherent in that activity, including the risk of personal injury caused by other persons using the facilities, both this court and the court of appeals have included another participant's negligence (together with the more obvious reckless or intentional conduct) within the range of risks that will not be assumed by a voluntary participant in a sporting activity." (citations omitted)); *Martin v. Luther,* 227 A.D.2d 859, 860, 642 N.Y.S.2d 728 (1996) ("[W]hile a participant in a sporting event generally assumes the risks inherent in the sport . . . he does not assume the risk of another participant's negligent play which enhances the risk." (citations omitted)). As between participants, the risk of collision resulting from one skier's negligence

should not, as a matter of law, be deemed a normal and ordinary danger of skiing such that Gloss owed no duty of care to Cruz so long as his conduct was not reckless. The "no duty" rule does not protect against foreseeably dangerous conditions which increase the risks to a participant over and above those inherent in the sport. *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 86, 394 A.2d 546, 551-52 (1978) (claim by spectator for being hit in the head by a batted baseball while using an interior walkway is not an inherent risk of baseball but, instead, resulted from the particular architectural design of the facility and was not barred).[6]

In defining duties, the type of activity and the relationship of the parties to that activity are often critical. In *Hughes,* and in many cases in which the "no duty" rule has been applied with respect to athletic or sporting events, as well as recreational and amusement facilities, the relationship between the parties has been that of a

---

6. "To illustrate this point, consider a frequently cited example of assumption of the risk: when one attends a baseball or hockey game one is presumed to assume the risk that he might be hit by a baseball or a puck. Nevertheless, if one is struck by a baseball intentionally thrown into the stands, or a puck intentionally shot into the seats, one cannot be deemed to have assumed that risk. Similarly, one who engages in skiing might be thought of as assuming the risk of falling or colliding with something. Yet, if a ski trail suddenly, and without warning, falls off causing one to fall and injure oneself, or if one collides with heavy machinery left in a skiing area, one cannot be thought of as having assumed that risk and the ski area operator should not be insulated from liability for the injury merely because the skier engaged in an activity that has inherent or attendant risks." *Bullman v. Giuntoli,* 761 A.2d 566, 573 (Pa. Super. 2000), *appeal denied,* 565 Pa. 661, 775 A.2d 800 (2001). See *Goade v. Benevolent and Protective Order of Elks,* 213 Cal.2d 183, 28 Cal.Rptr. 669 (1963) (explaining the difference between the risk of being hit by a batted ball and a baseball bat).

business invitee/spectator and possessor of property. This relationship is vastly different from that between sporting participants. In the first context it may, with some accuracy, be stated that the invitee voluntarily enters the relationship and as between him and the owner/operator agrees, whether expressly or implicitly, to assume the risk of injury from a participant, even a negligent one. In contrast, the relationship between the parties in this case arose by happenstance; neither the identity nor details of Gloss' conduct were known by Cruz before the injury occurred and it is contrary to human experience to argue that as between Cruz and Gloss, Cruz understood and expected that if she were injured by Gloss' negligence she would have no recourse against Gloss.[7]

---

7. The nature of the sport as well as the parties' relationship to the sport are important factors in determining what duty, if any, is owed to a plaintiff and by whom. *Hughes'* conclusion that the risk of collision with another skier is an "inherent risk" of skiing for which the owner/operator of a skiing resort cannot be held responsible does not direct that the same risk of collision as perceived by the plaintiff/skier precludes liability against another skier. The roles and responsibilities of the two defendants are legally distinct.

This point was recently discussed by the California Supreme Court in *Knight v. Jewett,* 3 Cal.4th 296, 317, 834 P.2d 696, 709, 11 Cal.Rptr.2d 2, 15 (1992) (plurality opinion) in which *Ratcliff v. San Diego Baseball Club,* 27 Cal.App.2d 733, 81 P.2d 625 (1938), a case involving an injury sustained by a spectator at a baseball game was analyzed.

"In *Ratcliff v. San Diego Baseball Club,* 27 Cal.App.2d 733, 81 P.2d 625 (1938), a baseball spectator was injured when, walking in the stands between home plate and first base during a game, she was hit by an accidentally thrown bat. She sued both the player who threw the bat and the baseball stadium owner. The jury returned a verdict in favor of the player, but found the stadium owner liable. On appeal, the court of appeal affirmed.

"Had the *Ratcliff* court utilized an implied consent analysis, the court would have looked only to the knowledge of the particular plain-

Those jurisdictions which have discussed the issue of participant liability are divided on the standard of care to be applied. Some—Arizona, Nevada, and Wisconsin are examples—address the issue under common-law principles of ordinary negligence: Did the participant act reasonably in the light of foreseeable and unreasonable risks:[8] "The primary argument for adhering to the negligence standard is the belief that this standard is flexible enough to be applied to a wide range of situations because it only requires that a person exercise ordinary care under the circumstances." *Mark v. Moser,* 746 N.E.2d 410, 416 (Ind. Ct. App. 2001). Others, a clear majority, have adopted a standard of "reckless or intentional conduct" or "willful and wanton or intentional misconduct." *Id.* at 416.

---

tiff (the spectator) to determine whether the risk of being hit by an accidentally thrown bat was an inherent risk of the sport of baseball assumed by the plaintiff, and would have treated the plaintiff's action against both defendants similarly with regard to such risk. The *Ratcliff* court did not analyze the case in that manner, however. Instead, the court implicitly recognized that two different potential duties were at issue—(1) the duty of the ballplayer to play the game without carelessly throwing his bat, and (2) the duty of the stadium owner to provide a reasonably safe stadium with regard to the relatively common (but particularly dangerous) hazard of a thrown bat. Because each defendant's liability rested on a separate duty, there was no inconsistency in the jury verdict absolving the batter of liability but imposing liability on the stadium owner for its failure to provide the patron 'protection from flying bats, at least in the area where the greatest danger exists and where such an occurrence is reasonably to be expected.' " *Ratcliff v. San Diego Baseball Club, supra,* 27 Cal.App.2d at 736, 81 P.2d 625.

8. *Estes v. Tripson,* 188 Ariz. 93, 932 P.2d 1364 (Ariz.Ct.App. 1997); *Auckenthaler v. Grundmeyer,* 110 Nev. 682, 877 P.2d 1039 (1994); *Lestina v. West Bend Mutual Insurance Co.,* 176 Wis.2d 901, 501 N.W.2d 28 (1993).

The reasoning for a standard of care less than negligence is founded upon public policy considerations and principles of implied consent, imposed either as a matter of law or by conduct. See *Mark v. Moser, supra,* and *Ritchie-Gamester v. City of Berkley,* 461 Mich. 73, 597 N.W.2d 517 (1999) (Both cases analyze and provide a survey of cases from various jurisdictions with respect to the appropriate standard of care for participants of sporting and recreational activities). Principal among the public policy considerations is the law's recognition that the rules of conduct between competing athletes must be different from those between members of the public in general. Aggressive play is an inherent aspect of competitive sports. "For example, it would be a breach of etiquette, and possibly the law, to battle with other shoppers for a particularly juicy orange in the grocery store, while it is quite within the rules of basketball to battle for a rebound." *Ritchie-Gamester v. City of Berkley, supra* at 523.

The need to permit players to compete fully and aggressively without the threat of needless litigation is essential to athletics at all levels of competition. The desire to win, not at all costs, but based upon a single-minded determination, inspired by team spirit or a struggle for individual excellence, demands that an athlete not be second-guessed within the confines of a courtroom for decisions made spontaneously on instinct and emotion. To permit claims for simple negligence would stifle vigorous participation and fundamentally alter the nature of the sport itself.[9]

---

9. "The apparent source of the contact sport exception is *Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258, in which plaintiff was injured in an amateur soccer match. The court stated that the law should

The fear of a flood of litigation and discouraging individual participation is another concern raised in some jurisdictions.

"If simple negligence were to be adopted as the standard of care, every punter with whom contact is made, every midfielder high sticked, every basketball player fouled, every batter struck by a pitch, and every hockey player tripped would have the ingredients for a lawsuit if injury resulted." *Jaworski v. Kiernan,* 241 Conn. 399, 696 A.2d 332, 338 (1997).

The implied consent justification for a lesser standard of care relies upon an analysis of a defendant's duty in the context of the nature of the sport involved. Essentially, voluntary participants in sporting activities owe "no duty of care to a co-participant with respect to risks that are considered to be within the ordinary range of activity involved in the sport." *Mark v. Moser,* 746 N.E.2d 410, 418 (Ind. Ct. App. 2001).

"In many recreational sports, softball included, some amount of physical contact is expected. Physical contact is an inherent or integral part of the game in many sports. The degree of physical contact allowed varies from sport

---

not place unreasonable burdens on the free and vigorous participation in sports but that 'some of the restraints of civilization must accompany the athlete on to the playing field.' (*Nabozny,* 31 Ill.App.3d at 215, 334 N.E.2d 258.) A player could be liable for injury in a tort action if his conduct was either deliberate, willful, or with a reckless disregard for the safety of the other player so as to cause injury to that player. (*Nabozny,* 31 Ill.App.3d at 215, 334 N.E.2d 258.) It was a question of fact for the jury whether defendant, who ran in plaintiff's direction and kicked plaintiff's head, engaged in such willful and wanton conduct. *Nabozny,* 31 Ill.App.3d at 214-15, 334 N.E.2d 258." *Novak v. Virene,* 224 Ill.App.3d 317, 320, 586 N.E.2d 578, 579, 166 Ill.Dec. 620, 621 (1991).

.

to sport and even from one group of players to another. In addition, the physicality of sports is accompanied by a high level of emotional intensity[, which also varies] from sport to sport and from game to game." *Crawn v. Campo,* 136 N.J. 494, 643 A.2d 600, 605 (1994). (citations omitted)

Such risks, as a matter of law, are determined to be inherent and foreseeable risks of the activity which a plaintiff is deemed to have assumed by his voluntary participation. When, however, a participant recklessly or intentionally inflicts injury on another, his conduct cannot fairly be considered a known, apparent, or reasonably foreseen consequence of participation and his role shifts from being that of a participant to that of a menace. Such conduct is outside the range of ordinary activity involved in the sport.

We believe the reasons for a "reckless or intentional" standard of care are appropriate and persuasive with respect to competitive contact sports, those in which "contact with other participants or objects is an anticipated, obvious, or incidental risk of participating in the sport." *Novak v. Virene,* 224 Ill.App.3d 317, 319, 586 N.E.2d 578, 579, 166 Ill.Dec. 620, 621 (1991). These sports include football, *Kabella v. Bouschelle,* 672 P.2d 290 (N.M.Ct.App. 1983); basketball, *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774 (1990); hockey, *Gauvin v. Clark,* 404 Mass. 450, 537 N.E.2d 94 (1989); soccer, *Jaworski v. Kiernan,* 241 Conn. 399, 696 A.2d 332 (1997); and softball, *Crawn v. Campo,* 136 N.J. 494, 643 A.2d 600 (1994).

The adoption of recklessness as the minimum standard of care for co-participants in competitive sports

"preserves the fundamental nature of sports by encouraging, rather than inhibiting, competitive spirit, drive, and strategy. Moreover, this standard will avoid judicial review of the kind of risk-laden conduct that is inherent in sports and generally considered to be part of the game, while at the same time imposing liability for acts that are clearly unreasonable and beyond the realm of fair play." *Mark v. Moser,* 746 N.E.2d 410, 422 (Ind. Ct. App. 2001).

This standard is further appropriate and persuasive with respect to competitive sports which do not involve intended or anticipated physical contact. In *Mark v. Moser,* 746 N.E.2d 410 (Ind. Ct. App. 2001), the Indiana Court of Appeals for the first time addressed the standard of care one competitor owes another in a sporting event. Plaintiff was injured in the bicycling leg of a triathlon competition when defendant cut in front of plaintiff resulting in both bicycles colliding and serious injuries to plaintiff. In dismissing plaintiff's claim for negligence, the court determined that a participant's claim for injuries arising in the course of competition against a co-participant must be predicated on more than negligence. "[L]iability will not lie where the injury causing action amounts to a tactical move that is an inherent or reasonably foreseeable part of the game and is undertaken to secure a competitive edge." *Id.* at 422.

This is true even though defendant's conduct involves violation of the rules of a sport. Though the rules of a sport are indicia of the standard of care which players owe to one another and their violation may be evidence of negligence, violation of the rules does not constitute negligence per se. *Id.* at 415-16.

"Courts that have adopted the recklessness or intentional standard have also tended to hold rule violations

as an inherent and anticipated part of the game." *Mark v. Moser,* 746 N.E.2d 410, 419 (Ind. Ct. App. 2001). Rule infractions, deliberate or otherwise, are an inevitable part of many sports and, while a co-participant's violation of the rules of the game may be evidence of liability, violation does not per se establish reckless or intentional conduct. *Id.* at 420.

"In athletic competitions, the object obviously is to win. In games, particularly those . . . involving some degree of physical contact, it is reasonable to assume that the competitive spirit of the participants will result in some rules violations and injuries. That is why there are penalty boxes, foul shots, free kicks, and yellow cards." *Jaworski v. Kiernan,* 241 Conn. 399, 696 A.2d 332, 337 (1997).

"Thus, while some injuries may result from rules violations, we believe such violations are nonetheless an accepted part of any competition and among the anticipated risks of participation in the game." *Mark v. Moser,* 747 N.E.2d 410, 420 (Ind. Ct. App. 2001).

In our view, the reasons for the standard of recklessness or intentional misconduct do not apply to noncompetitive, non-contact recreational activities. In such circumstances aggressiveness towards another participant should not be encouraged or supported by public policy considerations and is not an expected or assumed risk to which participants ordinarily subject themselves. The assumed risks in such activities do not include those created by defendant's negligence but those created by the nature of the activity itself. Nor should the courts fear mass litigation in this context when the defendant's conduct is neither reasonable nor within the rules of the game.

The reasoning of the exception for contact and competitive sports is not present in noncompetitive, noncontact recreational sports.

"As in the individual sports of running and bicycling, there is the possibility of collisions in downhill skiing. But by one's participation in the sport, one does not voluntarily submit to bodily contact with other skiers, and such contact is not inevitable. Therefore, the concern that the possibility of a negligence lawsuit would damper vigorous participation is inapplicable to downhill skiing. There is no reason to expand the limited contact sports exception to exempt downhill skiers from negligence liability if they negligently collide with other skiers. Many activities in life are fraught with danger, and absent a specific assumption of risk, one may obtain damages when injured by another's negligence. Defendant's conduct should be governed by ordinary negligence standards." *Novak v. Virene,* 224 Ill.App.3d 317, 321, 586 N.E.2d 578, 580, 166 Ill.Dec. 620, 622 (1991) (finding downhill skiing to be a non-contact sport and a downhill skier to be subject to liability for alleged negligence in causing a collision with another skier).

The logic of this reasoning is persuasive and equally applicable to Cruz' claim.[10] Cruz and Gloss were not in competition with one another and downhill skiing is, primarily, a non-contact sport. And while the danger of being hit by another skier—or snowboarder, where both activities occur together—is foreseeable, engaging in an activity that has some inherent danger does not automati-

10. But, see *Mastro v. Petrick,* 93 Cal.App.4th 83, 112 Cal.Rptr.2d 185 (2001) (duty of care owed by snowboarder to skier does not include a general duty of care; to be responsible, a snowboarder must have caused intentional injury or acted recklessly).

cally prohibit recovery against a negligent party when injury is sustained. *Barrett v. Fredavid Builders Inc.,* 454 Pa. Super. 162, 685 A.2d 129 (1996), *appeal denied,* 548 Pa. 653, 698 A.2d 63 (1997).[11] We conclude, therefore,

11. The distinction is one between comparative negligence and assumption of the risk.

"[A] plaintiff who acts under circumstances in which he knows or a reasonable person would know that what he is doing is dangerous is merely negligent. His conduct is properly analyzed under the Comparative Negligence Act. *Fish v. Gosnell,* 316 Pa. Super. at 578-79, 463 A.2d at 1049. If he is less than 50 percent causally responsible for the resulting injury, he will still recover, at least partially.

"The assumption of the risk defense, on the other hand, requires more. Only if a plaintiff ' "fully understands" the specific risk, "voluntarily chooses" to encounter it, "under circumstances that manifest a willingness to accept it," ' is he said to have assumed the risk." *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 136, 542 A.2d 525, 533 (1988). (citations omitted) The requirement that the risk be assumed "under circumstances that manifest a willingness to accept" it most often involves "[p]reliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity" rather than "last minute decisions, of the sort that might be heavily influenced by an erroneous guess," the latter of which are more appropriately "judged by [their] reasonableness, that is, by negligence principles." *Fish v. Gosnell,* 316 Pa. Super. 565, 578-79, 463 A.2d 1042, 1049 (1983).

In going further than comparative negligence, the conduct supporting assumption of the risk must either expressly or implicitly support the conclusion that plaintiff agreed to relieve the defendant of responsibility and abandon any claim he might otherwise have against the defendant. "[A] plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries." *Staub v. Toy Factory Inc.,* 749 A.2d 522, 529 (Pa. Super. 2000) (en banc).

Relevant to this issue is comment "h" of section 496C of the Restatement (Second) of Torts.

"The basis of assumption of risk is consent to accept the risk. In order for assumption of risk to be implied from the defendant's conduct, it must be such as fairly to indicate that the plaintiff is willing to take his chances. Implied consent is consent which exists in fact, but

that while assumption of the risk applies to the sport of downhill skiing, when skiers and snowboarders are both permitted to occupy the same ski slope simultaneously, the duty of care owed by a snowboarder to a skier is not to cause injury intentionally, or to act recklessly or negligently.[12]

We believe that this standard accurately reflects the actual expectations of the parties and properly "balance[s] the need to ensure that victims of tortuous injury have a remedy without creating a harbor for trivial suits, or destructive levels of litigation that will inhibit important social activity." *Ritchie-Gamester v. City of Berkley,* 461 Mich. 73, 597 N.W.2D 517, 527 (1999). We hold only that as between co-participants engaged in a noncompetitive, non-contact recreational activity, one participant does not assume the risk of the other's negligence as a matter of law.

---

is manifested by conduct rather than by words. It is not every voluntary encountering of a known and understood danger which is reasonably to be interpreted even as evidence of actual consent. A plaintiff, for example, who dashes into the street in the middle of the block, in the path of a stream of cars driven in excess of the speed limit, certainly does not manifest consent that they shall be relieved of the obligation of care for his safety. This is merely contributory negligence, and not assumption of risk." Comment cited with approval in *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 601, 437 A.2d 1198, 1203 (1981) (plurality opinion).

12. While concluding that the "no duty" aspect of assumption of the risk does not bar a cause of action for negligence against a co-participant in noncompetitive, non-contact recreational activities, this holding does not render illusory the earlier finding that the doctrine of assumption of the risk has general applicability to the sport of downhill skiing. The "no duty" prong of this doctrine is only one aspect of the doctrine and, in a proper case, other branches of the doctrine may well bar an action against other parties in addition to ski area operators.

We hold then that Cruz' claim is not barred as a matter of law and that the question whether Gloss' conduct was negligent or reckless is a question of fact to be determined by the jury.[13]

## ORDER

And now May 1, 2002, upon consideration of defendant's motion for summary judgment pursuant to Pa.R.C.P. 1035, and the court having considered the submissions of the parties and heard argument of counsel, it is hereby ordered and decreed that defendant's motion for summary judgment is denied for the reasons set forth in the foregoing memorandum opinion.

---

13. This result is consistent with our Supreme Court's decision in *Douglas v. Converse,* 248 Pa. 232, 93 A. 955 (1915) (question of fact for the jury whether personal injuries resulting from a player's horse entering the seating area was an inherent risk of polo or resulted from reckless playing or failure of the player to exercise reasonable control over his horse) wherein the Supreme Court in an action between a spectator and a polo player held that spectators do not assume a risk which results from reckless or negligent conduct of a player.