**Robert ARCHIBALD and Krista Archibald, Appellants**

v.

**Cody KEMBLE, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 16, 2008.

Filed April 23, 2009.

Scott B. Cooper, Harrisburg, for appellants.

Stephen L. Banko, Camp Hill, for appellee.

BEFORE: PANELLA, CLELAND, JJ. and McEWEN, P.J.E.

OPINION BY CLELAND, J.:

¶ 1 Appellants, Robert and Krista Archibald (Archibald or Archibalds), appeal the December 6, 2007 Order granting Appellee Cody Kemble's (Kemble) Motion for Summary Judgment. The crux of this case is the standard of care to be applied when a player in an adult "no-check" ice hockey league checks and injures another player in violation of the league rules. Because we conclude the applicable standard of care is recklessness and because the Archibalds were not required to specifically plead recklessness in their Complaint and because they produced evidence of recklessness in their discovery, we vacate and remand.

¶ 2 Archibalds' Complaint alleges:

1. Robert Archibald and Krista Archibald have been married as husband and wife at all times relevant hereto and currently and at all times relevant hereto have resided at 9 Shoff Court, Mechanicsburg, Cumberland County, Pennsylvania, 17055.

2. Defendant, Cody Kemble, is an adult individual and at all times relevant hereto has resided at 353 Sarhelm Road, Harrisburg, Dauphin County, Pennsylvania.

3. The events hereinafter took place on or about June 2, 2003 at the Twin Ponds East skating facility in Lower Paxton Township, Dauphin County, Pennsylvania.

4. At the aforementioned time and place, the Plaintiff, Robert Archibald, and Defendant were participating in an adult non-checking ice hockey league game.

5. At the aforementioned time and place, the Plaintiff, Robert Archibald, was playing the position of right wing and in a corner of the ice rink and playing the puck when he was, without provocation or warning, checked by the Defendant into the boards of the ice hockey rink.

6. The check into the boards resulted in … Robert Archibald's body hitting the side of the ice rink, causing injuries set forth below.

7. At the aforesaid time and place, the Plaintiff, Robert Archibald, was exercising due care at all times and participating in the non-checking adult ice hockey league.

8. As a result of the aforesaid check into the boards, the Plaintiff, Robert Archibald, suffered serious and what may be permanent injuries that include, but are not limited to the following:

  a.  comminuted femur fracture;

  b.  stiff knee;

  c.  scarring;

  d.  multiple surgeries requiring the placement of screws and other hardware into the leg; and

  e.  infection.

9. The Plaintiff, Robert Archibald is advised and therefore avers that the injuries may be progressing, and permanent in nature and effect.

. . . .

11. The Defendant, Cody Kemble's negligence consisted of the following:

   a. failing to assure that Robert Archibald was aware and/or warned that the check was going to be attempted before checking him into the boards;

   b. failing to assure that Robert Archibald was willing to be checked;

   c. checking Robert Archibald when not safe to do so;

   d. failing to understand and learn the rules, prohibition and limitation on any checking prior to participating in the non-checking league and game.

Archibalds' Complaint at ¶¶ 1–9, 11.

¶ 3 Robert Archibald testified the hockey league is a nonchecking league. Archibald's deposition, 2/8/2006, at 10, 13. He further testified that nonchecking means "no bodily contact" other than incidental contact. *Id.* at 11. Archibald explained the league rules set forth that checking is not permitted and that the league rules are posted on bulletin boards and in the league's brochures. *Id.* at 19. The game in issue was a "spirited" game because "playoff positions were at stake." *Id.* at 22. He explained Kemble, who was "the best player on the ice that night," got into a verbal altercation with one of Archibald's teammates before Archibald's injury. *Id.* at 24. In describing Kemble's approach, Archibald testified, "[M]y head was down, and I saw him pick up his right skate and jamb [sic] it into my left skate as we skated side by side." *Id.* at 27. When asked whether he actually saw Kemble's skate come into contact with his skate, he answered, "Absolutely. . . . I saw the skate lift up and I saw the skate come down. . . . My left skate, he pulls up, lifts his right skate and jambs [sic] it this way into my skate." *Id.* at 29. Archibald described this act as "proactive physical contact." *Id.* at 30. As a result of Kemble's check, Archibald explained he "crashed into the boards, hip first." *Id.* at 28. He was transported from the hockey rink to the hospital by ambulance. *Id.* at 33. Archibald suffered severe pain. *Id.* at 30. His femur was "completely shattered" and the bone is "gone." He now has two rods "down the length of his thigh." He also suffered from significant blood loss and infection. He has a twelve-inch incision on his leg. *Id.* 34–36. He can no longer jog or play hockey. *Id.* at 39. His leg is permanently injured. His medical bills are approximately $35,000.00. *Id.* at 38.

¶ 4 Hockey expert Patrick Quinn testified that if the incident occurred as Archibald described, the action is called "slew-foot." Quinn's deposition at 22. Based on Archibald's version of the facts, Quinn testified: "And Mr. Archibald was piled into the rink, into the boards at the end of the rink, in a very dangerous manner, dangerous enough to cause some serious injury." *Id.* He further explained, "A slew-foot basically is taking your own foot, and from behind usually it happens where you just kick the foot. Generally the foot is planted . . . as you're skating, and you kick that foot out from behind with the intention of knocking the player off his feet." *Id.* Quinn explained slew footing is not accepted at the professional level and definitely not expected in a no-contact league. Quinn continued, "[I]t's a very deliberate action." *Id.* at 23. In evaluating whether the act as described by Archibald was intentional, Quinn explained, "[Kemble] knows the rules. He knows how the game is played. He knows what contact is.

And if he, indeed, slew-footed this guy, that was intentional." *Id.* at 26.

¶ 5 Cody Kemble testified he had been playing hockey since he was four years old. Kemble's deposition, 2/8/2006, at 7. He was eighteen years old at the time of the incident. *Id.* at 4, 9. Kemble testified the league was a nonchecking hockey league. *Id.* at 11, 20, 16. (The parties stipulated the league was a nonchecking league. *See* Quinn's deposition, 7/16/2007, at 23.) Kemble testified nonchecking means "no hitting ... no ... slamming your body into another person to knock them over and off the puck." Kemble's deposition at 11. He explained slew footing would be in violation of league rules. *Id.* at 12. Kemble asserts he did not recall any bodily contact with Archibald. *Id.* at 17. Kemble explained he did, however, attempt to lift Archibald's hockey stick and take the puck from underneath. *Id.* at 14.

¶ 6 We first turn to the standard of care to be applied when a player in an adult "no-check" ice hockey league checks and injures another player in violation of the league rules. There is no Pennsylvania appellate authority on point.

■ ¶ 7 After thorough review of the law of other jurisdictions, we hold that a hockey player must have engaged in reckless conduct to be subject to liability for injuries received by another player in a no-check league. The trial court determined recklessness or intentional conduct must be shown.[1]

¶ 8 Any analysis must begin with the recognition that "reckless" and "intentional" conduct are not synonymous.

¶ 9 The Restatement (Second) of Torts explains the distinction:

Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from the facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which cannot be said to intend the harm in which his act results.

Restatement (Second) of Torts § 500 cmt. f (1965).

¶ 10 The Restatement (Second) of Torts explains the distinction:

Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from the facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which cannot be said to intend the harm in which his act results.

Restatement (Second) of Torts § 500 cmt. f (1965).

¶ 11 Several other jurisdictions have applied the standard of recklessness in factually similar sports situations. Of those

---

1. The trial judge explained:
   In order to recover the relief requested, recklessness or intentional conduct must be shown. Had the words "reckless" or "intentional conduct" even appeared within Plaintiffs' Complaint, Defendant's position that Plaintiffs' have failed to state a cause of action for which relief can be granted would be erroneous.
   Trial Court Order, 12/5/2007, at 1.

jurisdictions that have decided cases of this nature, a majority apply the standard of recklessness. *See Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258 (1975).[2]

¶ 12 Vigorous participation in athletic competition is a public policy to be encouraged. *See Hackbart v. Cincinnati Bengals, Inc. and Charles "Booby" Clark,* 601 F.2d 516 (10th Cir.1979); *Oswald v. Township High School District No. 214,* 84 Ill. App.3d 723, 40 Ill.Dec. 456, 406 N.E.2d 157 (1980); *Ross v. Clouser,* 637 S.W.2d 11 (Mo.1982); *Kabella v. Bouschelle,* 100 N.M. 461, 672 P.2d 290 (Ct.App.1983). "Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played." *Ross,* 637 S.W.2d at 14.

¶ 13 However, we also recognize that "organized, athletic competition does not exist in a vacuum." *Nabozny,* 334 N.E.2d at 260. Where, as in the present case, the participants are engaged in an adult competition governed by a set of rules, and when the participants know or should know the rules and understand the rules serve to protect the participants, then each player has a duty to the next to comply with those rules. "A reckless disregard for the safety of other players cannot be excused." *Id.* at 261.

¶ 14 We are also mindful that adopting a mere negligence standard could lead to an overabundance of litigation. In a sport, such as hockey, where some risk of injury is inherent in the nature of the game, litigation should not potentially follow every time a participant negligently causes injury. "If simple negligence were to be adopted as the standard of care, every punter with whom contact is made, every midfielder high sticked, every basketball player fouled, every batter struck by a pitch, and every hockey player tripped would have ingredients for a lawsuit if injury resulted." *Cruz v. Gloss,* 57 Pa. D. & C.4th 449, 465 (2002) (quoting *Jaworski v. Kiernan,* 241 Conn. 399, 409–410, 696 A.2d 332, 338).[3]

¶ 15 The majority of jurisdictions that have dealt with this issue have adopted the

**2.** *But see Estes v. Tripson,* 188 Ariz. 93, 932 P.2d 1364 (Ct.App.1997); *Auckenthaler v. Grundmeyer,* 110 Nev. 682, 877 P.2d 1039 (1994) where a horse rider was injured when kicked by a horse, the court held: the negligence standard is "more attractive" than recklessness because it is "malleable" and simple for the jury; *Crawn v. Campo,* 266 N.J.Super. 599, 630 A.2d 368, 375 (App.Div. 1993) where a catcher in a pick-up softball game was injured, the court explained: "a person participating in sports activities can properly be required to act as a reasonable person of ordinary prudence under the circumstances;" and *Lestina v. West Bend Ins. Mutual Company,* 176 Wis.2d 901, 501 N.W.2d 28 (1993). Our review of cases from jurisdictions applying a negligence standard leads us to conclude most cases are distinguishable from the case at bar. For example, *Auckenthaler* dealt with a noncompetitive sport and the court relied on several cases where the injuries resulted from sports far different than hockey such as snow skiing and golfing. Although *Crawn* and *Estes* dealt with a competitive sport, they did not deal with a league where safety rules were in place. For the reasons set forth in this Opinion, we are not persuaded the standard of care in this case should be negligence.

**3.** Even though *Cruz* is not binding on this Court and it is factually distinguishable from the case at bar, the trial court provided a thorough analysis of the duty of care owed by participants in competitive, contact sports in other jurisdictions. In *Cruz* a snowboarder collided with and injured a stationary downhill skier. The Honorable Roger N. Nanovic of the Court of Common Pleas of Carbon County determined in the matter of first impression the snowboarder owed a duty of care to the skier not to act negligently. The trial court considered the skier and snowboarder were not in competition with one another, nor were they engaged in a contact sport.

Restatement's standard for recklessness and we do so as well under the facts of this case.[1]

■ ¶ 16 The Restatement provides:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

. . . .

Special Note: The conduct described in this Section is often called "wanton or wilful misconduct" both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.

Restatement (Second) of Torts § 500 (1965).[5]

■ ¶ 17 Recklessness, or willfulness, or wantonness refers to a degree of care Prosser describes as "aggravated negligence." Nevertheless, "[t]hey apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is to be treated in many respects as if it were so intended." W. Page Keeton et al., Prosser and Keeton

on Torts § 34 (5th ed. 1984). In this case, even though we hold Archibald must prove Kemble acted recklessly, the cause of action remains sounding in negligence. *Cf. Stubbs v. Frazer*, 308 Pa.Super. 257, 454 A.2d 119 (1982). Therefore, merely determining the degree of care is recklessness does not give rise to a separate tort that must have been pled within the applicable statute of limitations. The trial judge was correct in ruling the degree of care is recklessness. He erred in concluding that Archibalds' cause of action was not subsumed within the negligence count pled in their Complaint.

■ ¶ 18 Pennsylvania Rule of Civil Procedure 1019(b) provides: "Malice, intent, knowledge, and other conditions of the mind may be averred generally." An example of a condition of the mind that may be averred generally is wanton conduct. *See Ammlung v. City of Chester*, 224 Pa.Super. 47, 302 A.2d 491, 497 (1973) (citations and quotation marks omitted) (explaining "Under Pa.R.C.P. No. 1019(b), (m)alice, intent, knowledge, and other conditions of mind may be averred generally. Wantonness, being in principle a state of mind, has been regarded as included in this rule."). Because recklessness is also known as "wanton and willful misconduct," "recklessness" is a condition of the mind that may be averred generally.

¶ 19 In acknowledging the burden is recklessness, Archibalds' Complaint is not being changed at all let alone being changed to add new facts or new parties.

---

**4.** The standard for liability may be different under different circumstances, such as the sport being played, whether the players are children or adults, or whether the injured party is not a participant at all but a spectator, landowner, etc.

**5.** The confusion between "recklessness" and "intentional" conduct is understandable. The definition of "recklessness" includes the word

"intentionally." The definition of recklessness includes that the actor "intended" the act but not necessarily the result. "Recklessness exists where a person knows that the act is harmful but fails to realize that it will produce the extreme harm which it did produce." *Hackbart*, 601 F.2d at 524. This distinction has important practical consequences, as illustrated by this case.

Kemble suffers no prejudice because he is already aware of the facts. The heightened burden from simple negligence to recklessness hinders Archibald, not Kemble. Lastly, Kemble is not prejudiced considering in his Answer and New Matter Kemble provided: "Mr. Kemble was not negligent, *reckless* or careless with respect to any conduct regarding the injuries and damages alleged by Plaintiffs." Defendant's Answer and New Matter to Plaintiffs' Complaint at ¶ 23 (emphasis added).

¶ 20 Factors to be considered in determining whether a player's conduct was reckless and gives rise to liability include:

> The specific game involved, the ages and physical attributes of the participants, their respective skills at the game and their knowledge of its rules and customs, their status as amateurs or professionals, the type of risks which inhere in the game and those which are outside the realm of reasonable anticipation, the presence or absence of protective uniforms or equipment, the degree of zest with which the game is being played, and doubtless others.

*Ross*, 637 S.W.2d at 14 (quoting *Niemczyk v. Burleson*, 538 S.W.2d 737, 741–42 (Mo. Ct.App.1976)).

¶ 21 Having determined the standard of care is recklessness, we now examine the record to evaluate whether the Archibalds came forward with evidence to support each element of their cause of action.[6]

¶ 22 Archibald has produced evidence that he and Kemble played in a league where Kemble knew he had a responsibility to Archibald not to engage in certain conduct including checking. Thus, Archibald has produced evidence that Kemble owed a duty of care to Archibald.

¶ 23 Archibald described the action as being intentional. Hockey expert Quinn explained if the incident occurred as Archibald explained that it was a "deliberate action." Quinn explained Kemble's action could cause serious injury. Kemble explained he had been skating for fourteen years, that he understood the term "check" to mean knocking a person down, and that he understood slew-footing was prohibited by league rules. Thus, Archibald has produced evidence that Kemble breached his duty of care by acting recklessly.[7]

¶ 24 Archibald explained he immediately crashed into the boards after being checked by Kemble. Thus, Archibald produced evidence that Kemble *caused* the injury.

¶ 25 Lastly, Archibald explained he suffered extensive physical injury including permanent injury to his leg as well as financial injury such as $35,000.00 in medical bills. Thus, Archibald produced evidence that Kemble caused damages.

---

**6.** Pennsylvania Rule of Civil Procedure 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after, the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action.

Pa.R.C.P. 1035.2.

**7.** *See* the Restatement definition of recklessness, *supra*.

¶ 26 The issue before the trial court was whether or not to grant Kemble's Motion for Summary Judgment. Summary judgment could only have been granted in favor of Kemble if Archibald had failed to present evidence to support each element of the cause of action. As we have determined, it is clear from the record there is evidence that Kemble owed a duty of care to Archibald, that he breached the duty by acting recklessly, and that Kemble's breach of his duty of care caused injury and damages to Archibald. Whether, of course, Archibald is able to persuade a jury these facts are true remains to be seen, but Archibald must be given the opportunity to do so.

¶ 27 The trial court's Order of December 7, 2007 granting the Motion for Summary Judgment is vacated and the matter is remanded. Jurisdiction relinquished.