**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4204
_____

CHERYL L. RUNG; PETER RUNG, her husband,

v.

PITTSBURGH ASSOCIATES, LP, dba THE PITTSBURGH PIRATES,

C.B. RICHARD ELLIS/PITTSBURGH, LP,
Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-09-cv-00670)
District Judge: Hon. Gary L. Lancaster
_____

Submitted under Third Circuit LAR 34.1(a)
February 11, 2013

Before: HARDIMAN and ALDISERT, <u>Circuit Judges</u>, and STARK,[*] <u>District Judge</u>.

(Filed: February 12, 2013)

_____

OPINION OF THE COURT
_____

ALDISERT, <u>Circuit Judge</u>.

---

[*] Honorable Leonard P. Stark, Judge of the United States District Court for the District of Delaware, sitting by designation.

1

Cheryl and Peter Rung sued Pittsburgh Associates and CB Richard Ellis (hereinafter "CBRE") for injuries sustained when Cheryl Rung slipped and fell on the floor of a restroom at PNC Park, a baseball stadium located in Pittsburgh, Pennsylvania, the home of the Pittsburgh Pirates. Pittsburgh Associates owns the Pirates.[1] CBRE manages the stadium for the Pirates, and is responsible for maintenance of all public areas of the stadium, including public restrooms. The Pirates and CBRE each contested liability in the personal injuries case and cross-claimed against each other for contribution and indemnification. The Rungs settled the slip-and-fall claim with the Pirates and CBRE, but the cross-claims for indemnity remain as the subject of the present litigation. The United States District Court for the Western District of Pennsylvania granted summary judgment in favor of the Pirates. CBRE appeals. We will reverse and remand.

I.

The Pirates and CBRE entered into a written Facilities Maintenance and Leasing Agreement dated February 27, 2007 (the "FMLA"). Two indemnification provisions contained in the FMLA's Article IX control the disposition of the indemnity cross-claims. The first relevant provision is § 9.1, Manager's Indemnity:

> 9.1    Manager's Indemnity. Without limiting any indemnity provided elsewhere in this Agreement, [CBRE] shall indemnify, defend, protect and hold harmless [Pirates] and [Pirates'] Representative . . . from and against all claims, losses and liabilities . . . which arise out of (a) any breach of this Agreement by [CBRE], (b) any act of [CBRE] which is outside the scope of [CBRE's] authority under this Agreement, or (c) the professional negligence, _gross_ negligence, recklessness, willful misconduct, fraud or criminal acts of [CBRE] . . . .

App. 231 (emphasis in original). CBRE contends that § 9.1, Manager's Indemnity imposes a duty on it to indemnify the Pirates only if that paid loss arises out of CBRE's

---

[1] We will refer to Pittsburgh Associates as the Pirates throughout this opinion.

professional negligence or gross negligence, not simple negligence. The other relevant provision is § 9.2, Team's Indemnity:

> 9.2    Team's Indemnity. Team shall indemnify, defend, protect and hold harmless [CBRE] . . . from and against all claims, losses and liabilities . . . which arise out of the performance by [CBRE] of its obligations and duties hereunder unless the claim, loss or liability arises from (a) any breach of this Agreement by [CBRE], (b) any act of [CBRE] which is outside the scope of [CBRE's] authority under this Agreement, or (c) the professional negligence, active negligence (except for [CBRE's] negligence which is covered under Team's Commercial General Liability [CGL] Insurance), recklessness, willful misconduct, fraud or criminal acts of [CBRE] . . . .

App. 231.

The District Court entered an order granting summary judgment in favor of the Pirates and denying CBRE's motion for summary judgment, and awarded the Pirates $52,168.91.[2] The Judgment encompassed the Pirates' contribution to the settlement plus interest, as well as those attorneys' fees and costs which were to be awarded to the prevailing party under the terms of the FMLA.

## II.

The District Court had jurisdiction over the original suit by Rung against CBRE and the Pirates pursuant to 28 U.S.C. § 1332, as Rung is a domiciliary of Florida and CBRE and the Pirates are both domiciled in Pennsylvania. The District Court had jurisdiction over the cross-claims pursuant to 28 U.S.C. § 1367, and retained jurisdiction over those cross-claims after settlement of the underlying lawsuit. See Fairview Park Excavating Co. v. Al Monzo Constr. Co., 560 F.2d 1122, 1125-1126 (3d Cir. 1977). We have jurisdiction pursuant to 28 U.S.C. § 1291.[3]

---

[2] On October 20, 2011, the District Court awarded the Pirates $40,913.91. On November 18, 2011, the District Court amended the judgment and awarded the Pirates an additional $11,255.00 in attorneys' fees, for a total award of $52,168.91.

[3] We exercise plenary review over a trial court's grant of a motion for summary judgment and apply the same standard that the district court applies. Dilworth v. Metro. Life Ins.

3

The District Court concluded that "the Rungs' allegation that CBRE acted recklessly [was] determinative under the terms of the FMLA," because "[t]he FMLA clearly and unequivocally states that if a claim arises out of CBRE's 'recklessness,' then CBRE has a duty to indemnify the Pirates." App. 7-8. The District Court determined that the allegation of recklessness by the Rungs obligated CBRE to indemnify, notwithstanding that "neither party acknowledge[d] it." App. 8.

CBRE contends that neither party briefed the issue of recklessness before the District Court because the concept of recklessness is inapplicable to the parties' dispute. We do not agree that the concept of recklessness is inapplicable to the dispute, but we do agree that the District Court incorrectly concluded that the Rungs' mere allegation of recklessness means that, under the terms of the FMLA, CBRE must indemnify the Pirates. Under § 9.1, CBRE must indemnify the Pirates for claims, losses or liabilities *which arise out of* CBRE's *recklessness*.

The parties agree that principles of insurance law are analogous and applicable to the dispute before this Court. Accordingly, we observe that under Pennsylvania law, the term "arising out of" denotes a "[b]ut for" or a "cause and result relationship." Allstate Prop. and Cas. Ins. Co. v. Squires, 667 F.3d 388, 391 (3d Cir. 2012) (quoting Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961)). Pennsylvania law incorporates the Restatement (Second) of Torts definition for the state of mind of recklessness:

---

Co., 418 F.3d 345, 349 (3d Cir. 2005). All evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in his favor. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Federal Rules of Civil Procedure.

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Archibold v. Kemble, 971 A.2d 513, 519 (Pa. Super. Ct. 2009) (quoting Restatement (Second) of Torts § 500 (1965)). Comment g to Section 500 of the Restatement (Second) of Torts describes the difference between negligence and recklessness:

g. *Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

IV.

The District Court examined the Rungs' complaint, as well as §§ 9.1 and 9.2 of the FMLA, and determined that "[b]ecause the Rungs' complaint alleges that CBRE acted recklessly, CBRE has a duty to indemnify the Pirates under the FMLA." App. 7. The District Court stated that "the Rungs' allegation that CBRE acted recklessly is determinative under the terms of the FMLA." App. 8.

For CBRE to incur the duty to indemnify the Pirates for a claim that "arises from . . . recklessness . . . of [CBRE]," FMLA § 9.2, it would seem that the underlying

facts of the events leading to Rung's injury must be found or conceded. In CBRE's response to the Concise Statement of Material Facts that the Pirates submitted in support of their motion for summary judgment, CBRE admitted to the content of Rung's testimony, but not to the underlying statements made by Rung:[4]

> 15.     Rung testified that as she entered the restroom, she observed that the floor was shiny and that there was water on the floor. She told her sister to "be careful." Rung testified that there were bigger puddles, smaller puddles everywhere and that the water was substantial.
> 16.     Rung testified that she avoided the water as she walked into a bathroom stall and the area of the floor within the stall was dry.
> 17.     Upon leaving the stall, Rung took a step towards the sink across from the stall when she slipped and fell.
> 18.     Rung thought she was stepping out onto a dry area of the floor but believes she stepped into water when she slipped.

App. 103.

Rung's testimony must be measured against the controlling precept of recklessness: whether CBRE "[knew] or ha[d] reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Restatement (Second) of Torts § 500. It is necessary for a fact finder to determine whether the conduct underlying the Rungs' complaint and allegations satisfies the recklessness standard under Pennsylvania law.

The Pirates, in apparent recognition that CBRE's conduct may not have actually been reckless, contend that after the Rungs alleged recklessness, CBRE became obligated to defend the Pirates, and that their failure to do so estops them from denying indemnification to the Pirates. Before the District Court, in their briefing in support of

---

[4] For ease of reading, we do not present CBRE's responses above, but note that CBRE admitted statements 15 and 16, and as for statements 17 and 18, admitted only that the statements reflected Rung's testimony.

6

their motion for summary judgment, the Pirates contended that CBRE was obligated to defend them based on the allegations in the Complaint. It does not appear, however, that they raised their estoppel argument before the District Court, and accordingly we will not consider it. "This court has consistently held that it will not consider issues that are raised for the first time on appeal." Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. 1994). If, however, "a gross miscarriage of justice would occur" we may consider such an issue. Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976) (citation omitted). We do not believe that this case presents such a situation, and accordingly we will not consider this argument here.

V.

Finally, the Pirates contend that we should uphold the grant of summary judgment on different grounds than those contained in the District Court's opinion. Although "[w]e *may* affirm a District Court's summary judgment ruling on different grounds, 'provided the issue which forms the basis for our decision was before the lower court,'" Nasir v. Morgan, 350 F.3d 366, 368 (3d Cir. 2003) (emphasis added) (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 904 n.1 (3d Cir.1998)), we are not required to do so, and we will not do so here.

* * * * *

We decide that nothing in this opinion reflects matters that should be under seal. The judgment of the District Court will be reversed and the proceedings remanded for further consideration in accordance with the foregoing.