J-A23035-24                    2025 PA Super 106

MILDRED BERNAVAGE, BY AND : IN THE SUPERIOR COURT OF
THROUGH HER AGENT-IN-FACT, : PENNSYLVANIA
CAROLYN VANSTON :
:
:
:
:
          v. :
:
:
:
GREEN RIDGE HEALTHCARE GROUP, : No. 1576 MDA 2023
LLC D/B/A GREEN RIDGE CARE :
CENTER AND SABER HEALTHCARE :
GROUP, LLC :
:
:
          Appellants :

Appeal from the Judgment Entered November 2, 2023
In the Court of Common Pleas of Lackawanna County
Civil Division at No:  2019-06227

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY STABILE, J.:                    **FILED: MAY 19, 2025**

Appellants, Green Ridge Healthcare Group, LLC d/b/a Green Ridge Care

Center and Saber Healthcare Group, LLP, appeal from the November 2, 2023

judgment in the amount of $3,035,235.00 in favor of Appellee, Mildred

Bernavage, by and through her agent-in-fact Carolyn Vanston.  We affirm the

award of compensatory damages but vacate the award of punitive damages.

The trial court summarized the pertinent facts and procedural history in

its opinion disposing of Appellants' post-trial motions:

> This matter involves a claim for professional negligence
> against entities involved in operating a long-term care facility.  In
> her complaint and amended complaint, [Appellee Carolyn
> Vanston] alleged that her 90-year-old mother, [Appellee Mildred
> Bernavage], suffered a fractured hip while [Appellants'] staff
> improperly transferred her on a slippery shower room floor

without use of proper precautions. [Appellants] in this case are Green Ridge Healthcare Group, LLC d/b/a Green Ridge Care Center and Saber Healthcare Group, LLC, which are a part of a network of multiple entities operating nursing homes across the Commonwealth of Pennsylvania and in several other states. This matter was tried to a verdict before two different juries in April 2023 and September 2023.

During the first trial from April 3, 2023 to April 6, 2023, [Appellants'] agents/employees made several admissions in their testimony. A certified nursing assistant ("CNA"), Virginia Czankner, was assigned to Ms. Bernavage at [Appellants'] facility on the date of her fall, February 5, 2018. In her testimony, Ms. Czankner agreed that she 'gambled' with [Bernavage's] safety in improperly transferring Ms. Bernavage in conscious disregard of known risks in the shower area. She agreed that she had made a reckless decision in doing so. The nurse manager at the facility, Lucille Morris, R.N., who acted as a liaison between the CNAs and nurses and [Appellants'] administrators, testified that administration was aware of the hazardous conditions and improper transfers occurring in this area of the facility. Ms. Morris agreed that it was reckless for [Appellants] to allow this to happen. [Appellee] also proffered a registered nursing expert, Kenneth McCauley, RN, who was admitted in the fields of skilled nursing and rehabilitation. Mr. McCauley testified that [Appellants'] conduct relative to these transfers showed recklessness.

[Appellee] moved for a directed verdict on the issues of negligence and recklessness in the middle of [their] case-in-chief based on the admissions by [Appellants'] employees. At the same time, [Appellee] made a request to file an amended complaint to conform with the evidence elicited at trial. [Appellee's] request for a directed verdict was denied. However, this court granted [Appellee's] request for leave to file an amended complaint to characterize [Appellants'] mental state as reckless and to allow [Appellee] to make a claim for punitive damages. Such a ruling was made after consideration of the specific allegations in [Appellee's] initial complaint and the admissions by [Appellants'] agents/employees during their testimony. Furthermore, in making the above rulings during the first trial, the court severed the issues relative to the factfinder's consideration of whether punitive damages should be awarded in this case.

The first jury was asked to consider whether [Appellants'] conduct fell below the standard of care and whether [Appellants'] negligence was a factual cause of Ms. Bernavage's harm. The first jury answered these questions on the verdict form in the affirmative. The first jury also awarded [Appellee] $300,000 in compensatory damages for Ms. Bernavage's non-economic losses. Relative to punitive damages, the first jury was also asked to answer two verdict interrogatories as to whether [Appellants] acted with the requisite state of mind, reckless indifference to the rights of Ms. Bernavage, that would allow for the recovery of punitive damages. The first jury also answered these questions in the affirmative. Based on the first jury's verdict, the pleadings were reopened and the parties then proceeded to conduct punitive damages discovery prior to the second trial.

\* \* \* \*

After a second period of pleadings practice and punitive damages discovery, the second trial commenced on the issue of punitive damages only on September 5, 2023 before a new jury. Because the first jury determined [Appellants'] liability and awarded compensatory damages, those issues could not be revisited at the second trial.

To ensure that the focus of the second trial was limited to a consideration of whether punitive damages should be awarded, and, if so, the amount of same, this court made rulings prior to the second trial that required the parties to proceed using the transcripts of the trial testimony for all the witnesses that were called in the first case. [Appellants] argued that they should be permitted to recall Ms. Czankner and Ms. Morris so they could offer further testimony. However, the time for [Appellants] to have Ms. Czankner and Ms. Morris do that was at the time of the first trial.

At the time of the second trial, the parties selected portions of these transcripts they wished to present that were read to the jury by the individual witnesses themselves, save for [Appellee's] experts whose transcripts were read in by other individuals. Since the only issue for the second trial concerned whether to award punitive damages, and, if so, the amount of same, the parties offered new, additional testimony and exhibits at the second trial regarding the wealth of [Appellants]. Further, the parties put forth evidence as to whether [Appellants] had the means or the ability to pay a punitive damages award for the jury's consideration. Because of a dispute as to [Appellants'] financial

- 3 -

means, this court allowed evidence regarding [Appellants']
corporate structure and the flow of revenues from the [Appellant]
entities to other entities under the same corporate umbrella. After
an additional four days of trial, the second jury awarded
$2,700,000 to [Appellee] in punitive damages, determining that
such damages were warranted.

Trial Court Opinion, 10/24/23, at 1-4.

After the punitive damages trial, Appellants moved for judgment notwithstanding the verdict ("JNOV") on punitive damages and the jury's finding of negligence. Appellants also moved for a new trial. The trial court denied relief, and this timely appeal followed.

Appellants raise the following assertions of error:

1.    Whether the trial court abused its discretion and/or committed an error of law in permitting [Appellee] to amend her complaint in the middle of the trial to add a punitive damages claim, more than three (3) years after the statute of limitations had expired?

2.    Whether the trial court abused its discretion in refusing to grant judgment notwithstanding the verdict on [Appellee's] claim of punitive damages?

3.    Whether the trial court abused its discretion in permitting the punitive damages jury to hear numerous references to a non-party entity (Saber Healthcare Holdings) in order to determine [Appellants'] net worth and ability to pay a punitive damages verdict?

4.    The trial court abused its discretion in refusing to permit two crucial witnesses, Virginia Czankner and Lucille Morris, to testify live at the punitive damages phase, and in further ruling that their 'live' testimony could not deviate from the first trial?

5.    Whether the trial court abused its discretion and committed an error of law in refusing to set aside the punitive damages verdict as grossly excessive, in violation of Pennsylvania state law and the Due Process Clause of the United States Constitution?

- 4 -

Appellants' Brief at 3-4.  We address each issue in turn.

First, Appellants argue the trial court erred in permitting Appellee to amend her complaint to add allegations of Appellants' recklessness and to request an award of punitive damages.  Rule 1033 of the Pennsylvania Rules of Civil Procedure governs amended complaints.  It provides, in pertinent part:

> **(a) General Rule.**  A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading.  The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense.  An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.Civ.P. No. 1033(a).  The trial court has discretion to decide whether to permit amendment of a complaint; we review the court's decision for abuse of discretion.  **TCPF Ltd. P'ship v. Skatell**, 976 A.2d 571, 574 (Pa. Super. 2009).  Amendments are to be liberally allowed so that parties can have their cases decided on the merits rather than dismissed on technicalities.  **Hill v. Ofalt**, 85 A.3d 540, 557 (Pa. Super. 2014).  Rule 1033 does not impose a time limit on when a complaint may be amended.  **Thom v. CDM Auto Sales**, 221 A.3d 681, 684-85 (Pa. Super. 2019).  Indeed, this Court has held that a complaint may be amended "at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom."  **Biglan v. Biglan**, 479 A.2d 1021, 1025–26 (Pa. Super. 1984).

Thus, "[d]enial of a petition to amend, based on nothing more than unreasonable delay, is an abuse of discretion." *Capobianchi v. BIC Corp.*, 666 A.2d 344, 347 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1065 (Pa. 1996). "The fundamental purpose of this rule is to prevent cases from turning on purely technical defects." *Biglan*, 479 A.2d at 1026. "The timeliness of the request to amend is a factor to be considered, but it is to be considered only insofar as it presents a question of prejudice to the opposing party, as by loss of witnesses or eleventh hour surprise." *Capobianchi*, 666 A.2d at 347. Thus, amendments may be disallowed where they result in surprise or prejudice to the opposing party, or where they violate a positive rule of law. *Discover Bank v. Stucka*, 33 A.3d 82, 88 (Pa. Super. 2011), *citing Horowitz v. Universal Underwriters, Inc.*, 580 A.2d 395, 398-99 (Pa. Super. 1990)).

Where the facts of the original complaint support an award of punitive damages, the plaintiff may amend to assert a claim for them. *Daley v. John Wannamaker, Inc.*, 464 A.2d 355, 361-62 (Pa. Super. 1983). The *Daley* Court explained that recovery of punitive damages "is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of the cause of action itself." *Id.* at 362 (quoting *Hibert v. Roth*, 149 A.2d 648, 652 (Pa. 1959)).

Likewise, in *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 474 A.2d 605 (Pa. Super. 1984), *affirmed*, 507 A.2d 1 (Pa. 1986), the plaintiff sought to amend its pleading "to state more

specifically" the evidence against one defendant upon which the plaintiff based its claims for contribution and indemnification. *Id.* at 614. The *Rivera* Court noted Rule 1033's "specific authorization for an amendment which conforms a pleading to the evidence." *Id.*

> Amendments which merely restate in a more distinct form the grounds set forth originally as the basis of the plaintiff's cause of action … or merely vary the cause of action, as originally stated, so that the subject matter remains the same, may be made at any time, even after the statute of limitations has run on the claim sued for.

*Id.* (quoting *Hoffman v. Hibbs*, 344 A.2d 546, 548 (Pa. Super. 1975)).

Here, Appellants claim Appellee's amendment violated the statute of limitations because its assertions of recklessness came more than two years after Appellee's fall. Appellants also claim the amendment was unfairly prejudicial insofar as they had prepared, through three years of litigation, to defend a theory of negligence rather than recklessness. We analyze these issues in turn.

Rule of Procedure 1019 permits a party to generally aver knowledge, intent, and state of mind. Pa.R.Civ.P. 1019(b). In *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190 (Pa. 2012), our Supreme Court explained the substantive distinction between negligent and reckless states of mind. "Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence." *Id.* at 1200. Despite this distinction, this Court has held that recklessness and negligence

are not different causes of action. "[G]ross negligence and recklessness are states of mind; they are forms of negligence, **not independent causes of action**." *Monroe v. CBH20, LP*, 286 A.3d 785, 799 (Pa. Super. 2022) (*en banc*) (emphasis added). "Thus, our procedural rules allow the plaintiff to plead gross negligence and recklessness generally." *Id.*

The *Monroe* Court cited favorably to this Court's opinion in *Archibald v. Kemble*, 971 A.2d 513 (Pa. Super. 2009), which held that "merely determining the degree of care is recklessness **does not give rise to a separate tort that must have been pled within the applicable statute of limitations**." *Id.* at 519 (emphasis added). In *Archibald*, the plaintiff and defendant played for opposing teams in a no-checking hockey league, and the plaintiff filed a negligence action against the defendant for checking him in violation of league rules. The *Archibald* Court held, as a matter of first impression, that the proper standard of care in such a case is recklessness. *Id.* Thus, "because the Archibalds were not required to specifically plead recklessness in their Complaint and because they produced evidence of recklessness in their discovery," we vacated and remanded the trial court's entry of summary judgment in favor of the defendant. *Id.* at 515.

Thus, in *Monroe*, an *en banc* panel of this court held that negligence and recklessness are **not** distinct causes of action. And the *Monroe* Court cited favorably to *Archibald*, where we held expressly that recklessness is not a distinct cause of action that needs to be asserted within the statute of

limitations applicable to negligence actions. These cases foreclose Appellants' argument that Appellee's amended complaint violated the statute of limitations. We proceed, nonetheless, to address several cases whose holdings are in apparent tension with **Monroe** and **Archibald**.

Appellants rely on **Romah v. Hygienic Sanitation Co.**, 705 A.2d 841 (Pa. Super. 1997), *affirmed*, 737 A.2d 249 (Pa. 1999), in which this Court explained that "[a] new cause of action arises if 'the amendment proposes a different theory or different kind of negligence than one previously raised or if the operative facts supporting the claim are changed.'" **Id.** at 857 (quoting **Junk v. East End Fire Dep't**, 396 A.2d 1269, 1277 (Pa. Super. 1978)). In **Romah**, the plaintiffs sought to amend their complaint, which asserted simple negligence, to assert claims of gross negligence[1] and attendant requests for punitive damages. **Id.** at 861. This Court remanded for a hearing on whether the discovery rule tolled the statute: "In their amended complaint, the Romahs seek to allege something quite different from ordinary negligence. This cannot be done if, upon remand, the lower court concludes that the statute of limitations was not tolled by operation of the discovery rule." **Id.** at 861 n.9. In other words, **Romah** held that an amendment from negligence to gross negligence is not permissible under the statute of limitations unless

---

[1] Gross negligence involves a greater departure from the standard of care than ordinary negligence but does not rise to the level of recklessness. **Feleccia v. Lackawanna College**, 215 A.3d 3, 20 (Pa. 2019)

the claim of gross negligence arises from facts that could not have been discovered earlier.

Appellants also cite *Willett v. Evergreen Homes, Inc.*, 595 A.2d 164, 169 (Pa. Super. 1991), *appeal denied*, 600 A.2d 539 (Pa. 1991), in which the plaintiffs, whose original complaint asserted a cause of action for negligence, sought to add claims of gross negligence in order to overcome defendants' statutory immunity defense. The trial court did not permit the amended complaint, and this Court affirmed, reasoning that the allegations in the original complaint did not form a basis for gross negligence or incompetency that would have overcome the statutory immunity defense. *Id.* at 167. The *Willett* Court concluded that gross negligence was a new cause of action that could not be raised in an amended wrongful death complaint filed three years after the decedent's death. *Id.* at 169.

*Romah* and *Willett* support Appellants' argument that the amended complaint in this case violated the statute of limitations. But *Romah* and *Willett* were decided by three-judge panels and their outcomes are irreconcilable with *Monroe*, an *en banc* opinion. *En banc* panels of this Court are authorized to overrule the opinion of a three-judge panel. *McGrath v. Bureau of Professional and Occupational Affairs, State Bd. of Nursing*, 173 A.3d 656, 661 n.7 (Pa. 2017). Further, the opinion of an *en banc* panel of this Court is binding on subsequent panels. Pa.R.A.P. 3103(b). Although *Monroe* did not expressly overrule *Romah* and *Willett*, this panel is bound

- 10 -

to follow the **Monroe** Court's teaching that recklessness and gross negligence are not distinct causes of action from ordinary negligence. We therefore must reject Appellants' argument that Appellee's amended complaint violated the statute of limitations.

We now turn to Appellants' argument that the amended complaint resulted in unfair surprise and prejudice. Our Supreme Court has addressed prejudice as follows:

> All amendments have this is common: they are offered later in time than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the time at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered late rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed[.]

**Bata v. Cent.-Penn Nat. Bank of Philadelphia**, 293 A.2d 343, 357 (Pa. 1972), *cert. denied*, 409 U.S. 1108 (1973).

As we explained above, amended pleadings are liberally allowed, and they may be amended very late in the proceedings. **Biglan**, 479 A.2d at 1025-26. The purpose for the liberal permission of amendments is to facilitate decisions on the merits, rather than dismissals for procedural defects. **Id.** Thus, in **Somerset Community Hosp. v. Allan B. Mitchell & Assocs., Inc.**, 685 A.2d 141 (Pa. Super. 1996), the plaintiff was permitted to amend a complaint by adding factual allegations to prove claims of oral contractual modifications where the original complaint alleged breach of written and oral

- 11 -

contracts. *Id.* at 147. And in ***Capobianchi***, the defendant was permitted to amend an answer four days before trial to assert a defense of collateral estoppel after the defendant prevailed in a related workers' compensation action. ***Capobianchi***, 666 A.2d at 346-47. The collateral estoppel defense was available until a final decision had been rendered in the workers' compensation case. *Id.* at 347; (***see also Posternack v. American Cas. Co. of Reading***, 218 A.2d 350 (holding that no unfair surprise resulted to plaintiff when the defendant sought to amend to raise a defense of *res judicata* based on the defendant's success in a related federal action).

On the other hand, the courts of this Commonwealth have commonly frowned on the late introduction of new theories of recovery. In ***West Penn Power Co. v. Bethlehem Steel Corp.***, 348 A.2d 144 (Pa. Super. 1975), the case proceeded along a timeline similar to that of the instant matter. The original complaint alleged the violation of a specific, agreed upon delivery schedule. After the parties conducted nearly four years of discovery, and on the last day of an eight-week trial, the plaintiffs sought to amend their complaint to allege that delivery was to be made within a "reasonable time." Even though the statute of limitations had not run, the late introduction of a new theory of recovery was prejudicial to the defendant:

> To permit a plaintiff to change its claim at the very end of the case may be unjust. The defendant will necessarily have conducted its case in response to the claim as presented; had the defendant known that a change in the claim would be permitted, it might have conducted its cross-examination of the plaintiff's

witnesses in an entirely different manner. To be sure, this will not always be so; much will depend on the particular circumstances.

*Id.* at 156.

In *Newcomer v. Civil Serv. Comm'n of Fairchance Borough*, 515 A.2d 108, 111 (Pa. Commw. 1986), *appeal denied*, 552 A.2d 51 (Pa. 1987), the petitioner police officer alleged that he was unconstitutionally deprived of a property interest—his job—without due process of law. *Id.* at 109-110. The petitioner's argument rested on a then-recent opinion from the United States Supreme Court[2] that the plaintiff did not raise before the Civil Service Commission or the trial court because the case was decided only ten days before the trial court dismissed his petition on the merits. *Id.* at 110. The trial court denied the police officer's request for leave to amend his petition to address the new Supreme Court precedent. The proposed amendment was not offered merely to cure a technical defect or cure, but rather to "present an entirely new theory of recovery and raise hitherto uncontemplated issues of law and/or fact." *Id.* at 112. Further, the retroactive effect of the United States Supreme Court was unclear. The trial court therefore did not abuse its discretion in refusing to permit the amended petition. *Id.*

Similarly, in *Smith v. Athens Twp. Auth.*, 685 A.2d 651 (Pa. Commw. 1996), *appeal denied*, 693 A.2d 591 (Pa. 1997), the plaintiffs sought to amend

---

[2] *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985). The particulars of the Constitutional argument in *Newcomer* are not relevant here.

their complaint after the close of testimony to include a constitutional claim in their action challenging tap-in fees for a municipal sewer system. *Id.* at 654. The *Smith* Court affirmed the trial court's denial of the plaintiffs' motion to amend, reasoning that "where amendment is sought after the testimony has been concluded, prejudice will always result to the extent that the opposing party has not contemplated the subject matter of the proposed amendment in the preparation and trial of the case." *Id.* at 655 (citing *Newcomer*, 515 A.2d at 111).

We also find instructive this Court's analysis in *Monroe*:

> *Archibald* recognizes the important distinction between the pleadings stage of the case and the summary judgment stage of the case. At the pleadings stage, the rules allow a plaintiff to make a general averment of gross negligence or recklessness. When initially filing a complaint, a plaintiff may not be fully aware of the defendant's state of mind. Only through discovery can the plaintiff ascertain what the defendant knew or should have known about the risk involved. It would place an undue burden on the plaintiff to plead specific facts about a defendant's state of mind at the time a lawsuit is initiated.
>
> Discovery gives the plaintiff an opportunity to learn this information. Through interrogatories, depositions, and requests for admission, a plaintiff can learn whether a defendant had notice of a dangerous condition before the plaintiff was injured. A plaintiff can discover information about the defendant's training and experience to see if the defendant knew or should have known about the risk involved that lead to plaintiff's injuries. The discovery phase of the case also gives the plaintiff time to hire an expert to investigate and opine on the standard of care and whether it was breached, not only in terms of ordinary negligence, but whether there were gross or reckless deviations from the standard of care.
>
> Once discovery is complete, then a plaintiff can be required to produce evidence of recklessness. If a plaintiff fails to produce

- 14 -

the evidence, Rule 1035.3 provides that summary judgment
should be entered for the defendant on the plaintiff's claims.

*Monroe*, 286 A.3d at 799-800. *Monroe* was a procedurally complex case
that did not involve a motion to amend, but the *Monroe* Court's analysis of
*Archibald* illustrates the normal means by which a negligence plaintiff can be
expected to discern and articulate the theory of recovery to be proven at trial.
That is not the course Appellee followed here.

Instead, there was no indication Appellee intended to assert
recklessness until Appellee's counsel examined Czankner at trial. Indeed,
Appellee's counsel opened by reminding Czankner that her trial testimony was
subject to the same oath Czankner took two years prior at her deposition.
N.T. Trial, 4/4/23, at 72-73. After reviewing the circumstances of Appellee's
fall, counsel led up to the following:

> Q. And do you agree, since you had seen moisture in there before, and water before, that on the transfer, you knew there's a possibility it can be wet?
>
> A. Correct.
>
> Q. In doing that, you still placed [Appellee] on the lip of the tub with a hope there would be no slipping, right?
>
> A. Absolutely.
>
> Q. And if there's slipping, since you know you're caring for a 90-year-old woman, you know that a slip and fall can result in fractured hips, brain injuries, fractured shoulders, broken ribs; correct?
>
> A. Correct.

Q. And that is why, when we have citizens like this in a shower facility, every precaution must be taken to avoid them landing on the floor, or on you on the floor; correct?

A. Correct.

Q. Do you agree that you did make a **conscious** choice to transfer [Appellee] in that way and not to clean the floor?

A. I agree.

Q. And you know that that **conscious** choice you made could have placed her at risk for falling?

A. I agree.

Q. Do you agree that, on the date, that was a **reckless** decision?

A. I do agree.

N.T. Trial, 4/4/23, at 97-98 (emphases added).

Further, Czankner testified that she had been using the same incorrect method for some time:

Q. And the proper transfer method is what we talked about earlier, which was to – from the wheelchair to have them hold onto your shoulders, you hold onto their hips, you stand them up, you turn and you pivot and put them in the shower chair; correct?

A. Correct.

Q. So, despite that training, you didn't abide by it on the date of the incident; correct?

A. I did not.

Q. And you would have been doing that, the way we just—not that way—you've been doing it the way you did for [Appellee] for several years while at Saber; correct?

A. Correct.

*Id.* at 98-99.

Finally, tracking the legal standard for recklessness, Appellee's counsel

pursued the following line of questioning:

> Q.     Can you tell me – you've been treating patients a long time – did she look nervous and frightened?
>
> A.     She looked very scared.  I spooked her when I slid; when we slid together.  She got spooked.
>
> Q.     And, in fairness, she got spooked, she was scared, that was because of you improperly transferring; correct?
>
> A.     Because of the fall.  Correct.
>
> Q.     Because of the improper transfer?
>
> A.     Correct.
>
> Q.     Because, on that date, **you knew that there was a risk, someone can fall like this, but you consciously disregarded that**?
>
> A.     There's a risk anytime they can fall; correct.

*Id.* at 103-04 (emphasis added).

Appellee's counsel also reminded Lucille Norris, Appellants' nurse

manager, of her deposition oath from two years earlier.  *Id.* at 139.  The

pertinent exchange between Appellee's counsel and Norris went as follows:

> Q.     If you keep doing something wrong and no one gets hurt, but, finally, when you do it wrong, however many times, the hundredth time, and someone gets hurt, that doesn't make it right, right?
>
> A.     No.
>
> Q.     And, in fact, to keep doing something wrong, knowing that you['re] putting a patient at risk, that's a **reckless** decision, isn't it?

A.      Yes.

Q.      And it's **reckless** by Saber to allow it to go on?

*Id.* at 153 (emphases added).  At this point, defense counsel objected to the use of the word reckless (there were no objections during Czankner's testimony), but the trial court overruled it after a sidebar discussion.[3]  *Id.* at 153-55.  Morris finally answered, "yes." *Id.* at 155.

Finally, Appellee's expert, Kenneth McCawley, testified as follows:

> Q.      If the administration knows that these transfers are taking place in an area that has hazard conditions, in an area that doesn't have grab bars, are they knowingly putting patients at risk for injury?
>
> A.      They are.
>
> Q.      By doing that, and you've been in administration, is that a **reckless** decision?
>
> A.      Immensely.
>
> Q.      Why?
>
> A.      I mean, at the end of the day, administration is there and, first and foremost, to make sure the residents are safe.  We have to give the highest quality of care possible at any given time. And to just let things lie and just say, oh, that's the way it's always been, it's unacceptable.
>
> Q.      Just because there wasn't an accident the past 80 times they did it, does that make it safe?
>
> A.      Absolutely not.

_____

[3]  Appellee argues that the lack of timely objections is fatal to Appellants' argument.  We disagree.  The substance of the witness's testimony on recklessness was of no legal significance until the trial court permitted the amended complaint.  Because Appellants opposed the amendment, their argument is sufficiently preserved.

*Id.* at 269-70 (emphasis added). These were the three witnesses Appellee presented in support of liability, presented on the first day of trial.

At the close of the first day of trial, Appellee moved for a directed verdict on liability, referencing Czankner's, Morris's and McCawley's testimony that Appellants' conduct was reckless. *Id.* at 298-300. Appellee's counsel argued that the issues of liability—and recklessness in particular—was beyond dispute. *Id.* at 300. Appellants' counsel opposed on grounds that the theory of recovery in this case had always been negligence. *Id.* at 300-02. Appellee's counsel responded:

> That argument would be fine if we came to this court based on what the deposition said. We had something very different take place in this courtroom, and it is not good for Saber that both of their agents admitted their decisions were reckless; conscious disregard of known risk, admitted to that. Czankner admitted she did the transfer incorrectly.

*Id.* at 303.

As emphasized above, Appellee's counsel introduced the concept of recklessness at the latest possible time—during day one of presentation of liability evidence at trial and then moved at the end of the presentation of liability evidence for a directed verdict that Appellants were liable under a recklessness theory of recovery. In the three years prior, Appellee never introduced the concept of recklessness into the case. No new facts came to light in the two years between the depositions of Czankner and Morris and their trial testimony, but Appellee's counsel did not examine them on recklessness during their depositions.

Indeed, in support of the trial court's ruling, Appellee argues that the facts alleged in the original complaint were sufficient to support a recklessness theory of recovery. The original complaint alleged that Appellee was transferred to the shower by only one person, despite Appellants' written policy requiring two people to perform the transfer. In other words, the original complaint alleged facts sufficient, under Rule 1019, for a general averment that Appellants consciously disregarded a known risk. We believe this undermines, rather than supports, the trial court's decision in this case.

Appellee's failure to develop the specific theory of recovery during discovery was not, in this case, a mere technicality subject to being cured by amendment at any point. Rather, the case Appellee developed at trial was substantively different from the theory she developed during discovery and alleged in her complaint, which was filed nearly four years prior to trial. At the eleventh hour, Appellee's solicited the word "reckless" from witnesses who could not be expected to understand the legal significance of that term. And the witness's use of the word "reckless" in their answers was of no legal significance until the trial court subsequently permitted Appellee's amended complaint. Thus, this was not simply an amendment to conform the complaint to the evidence garnered at trial. Rather, it was an introduction of a new theory of recovery at the latest date—an action that is frowned upon by our courts and which often results in a violation of the statute of limitations. And

while the statute is no bar here, per **Monroe**, the statute is not the only basis upon which amended complaints may be disallowed.

Unfair surprise is also grounds for withholding permission to amend a complaint, and we conclude that unfair surprise exists here, where a negligence plaintiff, without explanation, withholds the precise theory of recovery until the latest possible time. If, as Appellee argues, the facts of the complaint were sufficient to support a recklessness theory of recovery, then Appellee should have developed that theory during discovery, per our analysis in **Monroe**. Instead, Appellee's counsel asked questions at trial that he could have, but did not, ask two years prior at the witnesses' depositions. The witnesses used the word reckless at counsel's prompting. And counsel, through his questioning, introduced the concept of conscious disregard of a known risk. This line of questioning, on the day of the liability trial, resulted in unfair surprise to Appellants. And while we ascribe no motive to Appellee in this case, to reach a different conclusion than the one we reach would be to invite negligence plaintiffs to withhold their theory of recovery, be it negligence, gross negligence, or recklessness, until the last possible minute for the specific purpose of creating unfair surprise.

For all of the foregoing reasons, we conclude that the trial court abused its discretion in permitting Appellee to amend her complaint during trial. We therefore affirm the judgment insofar as it awarded compensatory damages

and vacate the award of punitive damages.  We remand to for entry of judgment in accordance with this opinion.[4]

Judgment affirmed in part and vacated in part.  Case remanded. Jurisdiction relinquished.


Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/19/2025

---

[4] Based on our disposition, we do not reach Appellants' remaining issues.